ESTELLE WOLINER, PLAINTIFF, v. JACK WOLINER, DEFENDANT.

Superior Court of New Jersey
Chancery Division
(Matrimonial)

Decided March 30, 1977.

*Mr. Jerome M. Katz* for Beth Israel Cemetery Association of Woodbridge (*Messrs. Katz, Bitterman & Dougherty,* attorneys).

*Mr. Ernest Prupis* for plaintiff (*Messrs. Weltchek, Prupis & Ritz,* attorneys).

Mr. Jack Woliner, defendant, *pro se.*

GRIFFIN, J. S. C. This decision stems from a motion to vacate a writ of execution on ten cemetery lots. The issue herein has not been decided by any reported New Jersey case.

The parties were married in 1937, divorced in 1950 and re-married in 1955. Mr. Woliner then moved to California and obtained a divorce in August 1972. This judgment specifically did not affect property rights or support. Prior to the California decree Mrs. Woliner had started a separate maintenance action in New Jersey. As a result of this action she was awarded support. It is in default. A judgment was entered in May 1976 for $4,175.71. Mr. Woliner has remarried.

In 1956 Mr. Woliner and plaintiff purchased ten cemetery lots. They are co-owners. One lot contains the body of a child born to Mr. Woliner's sister-in-law. No one wishes to disturb this lot.

Mrs. Woliner brought execution against these ten lots to enforce her judgment. Beth Israel Cemetery Association and Mr. Woliner resist by motion to vacate the writ. The motion is granted.

The judgment of the Chancery Division of the Superior Court has the same effect as a judgment at law. The case of *Welser v. Welser,* 54 *N. J. Super.* 555 (App. Div. 1959) holds:

> As we view the effect of *N. J. S. A.* 2A:16–18, a Chancery money judgment after entry upon the civil docket has the force and effect of a judgment at law so that, absent any restriction, the judgment creditor can have execution. [at 564]

However, there is a restriction relative to cemetery lots. *N. J. S. A.* 8A:5–12 provides in part as follows:

All lands dedicated in accordance with this act belonging to or used by any cemetery company, religious corporation, fraternal or charitable organization in this State shall be reserved for the use of the owners thereof against all causes of action and shall not be liable to be seized, taken or sold by virtue of any judgment, decree, order, execution or other process made or rendered by or issued out of any court in this State.

Although the case of *Gottlieb v. West Ridgelawn Cemetery,* 109 *N. J. Eq.* 585 (Ch. 1932), involved a judgment against the cemetery, not an individual owner, it does give some guidance.

* * * The land of the cemetery company cannot be sold for the purpose of satisfying a judgment if it is a part of a tract laid out in lots for burial purposes, although not presently used for such purposes. The mere fact that these lots have not yet been appropriated to the interment of bodies is immaterial. The statutory provision which has been cited provides that such lots shall not be subject to execution, and the court of chancery, therefore, has no more right to direct a sale of such lots for the purpose of satisfying a judgment than has a court of law. [at 587]

This court can see no distinction between a writ of execution by one co-owner against the other and a writ by any other judgment creditor. In either case the lots would be put up for public sale. This is the evil which *N. J. S. A.* 8A:5–12 seeks to avoid.

Chancery has the inherent power, however, to protect Mrs. Woliner without doing violence to the statute prohibiting execution. In *Fischer v. Fischer,* 13 *N. J.* 162, 165 (1953), a divorced wife was permitted to recover against a pension fund in spite of *R. S.* 43:16–7 which then provided as follows: "All pensions granted under this chapter shall be exempt from execution, garnishment, attachment, sequestration or other legal process." The statute was held to protect against creditors, but not the divorced wife. See also *Thiel v. Thiel,* 41 *N. J.* 446, 449 (1964), in which the employer

was ordered to make periodic payments from a pension fund directly to the wife in spite of a provision in the labor contract which read: "No assignment of any pension will be recognized or permitted nor shall any pension or payment on account of any pension be subject to attachment, execution or other legal process against the PENSIONER."

The remedy hereby given Mrs. Woliner follows the spirit of the *Fischer* and *Thiel* cases and will not result in a public sale of the lots.

The lot containing the body of the child shall remain undisturbed. Of the nine remaining lots, title to seven shall be vested in Mrs. Woliner, and title to two in Mr. Woliner. *N. J. S. A.* 8A:7-6 provides:

No conveyance or other action of the owner or owners of interment space without the consent or joinder of the spouse of the owner shall divest the spouse of a vested right of interment, except that a final judgment of divorce between them shall terminate the vested right of interment unless otherwise provided in the judgment.

Under this statute the present Mrs. Woliner has a vested right of interment. The court will assume, without deciding as it was not argued, that Mr. Woliner has a similar right. Hence, two lots are given to him. The value of his first wife's half share in these lots shall offset the value of his share in two of the seven lots given to her. The value of his one-half interest in the remaining five lots shall be credited against the judgment. Should Mr. Woliner and his present wife agree, all nine lots may be conveyed to the first Mrs. Woliner and one-half the value thereof shall be credited against the judgment. If the parties cannot agree on the value, testimony shall be taken. If the value of his interest exceeds the amount of the judgment with accrued interest, an application may be made to determine what disposition shall be made of the excess.

No costs or counsel fees shall be allowed.